UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE LANDT, individually and as co-trustee of the Landt Family Trust; et al.,<br><br>                                   Plaintiffs,<br><br>v.<br><br>M&E BROTHERS, LLC; et al.,<br><br>                                   Defendants. | Case No.:  3:25-cv-01364-RBM-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**[Doc. 22]** |

Defendants Kim Buhler and Norman Alton Hortman III, individually and as co-trustees of The Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2, 1985 (collectively, "the Hortman Defendants"), have filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"). (Doc. 22.)  Plaintiffs filed a Memorandum of Points and Authorities in Opposition to the Hortman Parties' Motion to Dismiss First Amended Complaint ("Opposition") (Doc. 24), and the Hortman Defendants filed a Reply Brief in Support of Defendants Kim Buhler and Norman Alton Hortman, III's Motion to Dismiss Plaintiffs' First Amended Complaint ("Reply") (Doc. 30).

The Court finds this matter suitable for determination without oral argument under Civil Local Rule 7.1(d)(1).  Having reviewed the filings above, and for the reasons below, the Motion to Dismiss (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.

1

## I.    BACKGROUND[1]

**A.    Parties**

Plaintiffs are the current owners of several properties in the Valley Plaza shopping center in Escondido, California.  (Doc. 17, First Amended Complaint for Damages ("FAC") ¶¶ 3–5.)[2]

Barbara Hortman ("Barbara"), along with her husband Norman Hortman ("Norman I"), were the former trustees of The Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2, 1985 ("Hortman Trust").  (*Id.* ¶ 6.)  The Hortman Trust formerly owned other properties in the same Valley Plaza shopping center, until 1999 when it "deeded the property" to other named Defendants not involved in this Motion to Dismiss.  (*Id.*)  Norman I and Barbara died on January 30, 2020 and April 20, 2021, respectively.  (*Id.*)

Defendants Kim Buhler and Norman Alton Hortman III ("Norman III"), children of the late Norman I and Barbara, are the current co-trustees of the Hortman Trust.  (*Id.* ¶¶ 6–7.)  Kim Buhler is also the executor and court-appointed administrator of the Estate of Barbara Hortman.  (*Id.* ¶ 6.)

**B.    Allegations**

Several dry-cleaning businesses operated on the land formerly owned by the Hortman Trust between 1971 and 1999.  (*Id.* ¶¶ 6, 31.)  During this period, all of the dry cleaners used the hazardous substance tetrachloroethene ("PCE"), a chlorinated solvent, in their operations.  (*Id.* ¶ 31.)  The dry cleaners released PCE into the soil over the years (*id.*), and one of them buried a drum that leaked and spilled PCE into the soil.  (*Id.* ¶ 6.)  Norman I

---

[1]  This section reflects the allegations in Plaintiffs' First Amended Complaint for Damages ("FAC") (Doc. 17), not conclusions of fact or law by the Court.  Well-pled factual allegations are accepted as true for purposes of the Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2]   The Court cites the paragraph numbers of the FAC, and the CM/ECF electronic pagination for all other filings, unless otherwise noted.

3:25-cv-01364-RBM-DEB

and Barbara knew about this spill as early as 1991. (*Id.*) Norman I and Barbara, "as trustees of the Hortman [] Trust, refused and failed to abate and clean up the contaminated soil and water table," instead allowing "the contamination to get worse and spread throughout the property" and the entire Valley Plaza. (*Id.*)

After the other named Defendants purchased the properties from the Hortman Trust, they discovered PCE in the soil while conducting repairs on a fountain in 2004. (*Id.* ¶ 8.) The other named Defendants "contact[ed] the County and arrange[d] for the [1,800 pounds of] contaminated soil around the fountain to be removed," but did nothing further to abate and remove the contaminated soil. (*Id.*) In the course of expert discovery in a related lawsuit, a geologist tested other properties in the Valley Plaza, including those belonging to Plaintiffs. (*Id.* ¶ 11.) The expert shared his results—indicating that Plaintiffs' properties were contaminated with PCE—with Plaintiffs in November 2022. (*Id.* ¶ 12.) As a result of Defendants' actions, Plaintiffs have incurred and will continue to incur costs related to removal, remediation, monitoring, and disposal of the contamination, as well as damages in the form of additional taxes or penalties and loss of the market and rental value of their properties. (*Id.* ¶ 42.)

**C.    Claims**

Plaintiffs bring this action against the Hortman Trust through its successor trustees, Kim Buhler and Norman III, for past conduct in permitting the discharge of PCE into the soil, and for present conduct in refusing to abate and clean up the soil the former trustees caused. (*Id.* ¶ 9.) The FAC consists of 15 causes of action:

(1) cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607;

(2) declaratory relief under CERCLA, 42 U.S.C. §§ 9607 and 9613;

(3) indemnity for removal and remedial costs under the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code ("HSAA") § 25363(e);

(4) declaratory relief under HSAA § 1060;

3

(5) public nuisance under California Civil Code §§ 3479 and 3480;

(6) private nuisance under California Civil Code § 3479;

(7) negligence;

(8) waste;

(9) trespass;

(10) fraudulent conveyance under California Civil Code § 3439.04;

(11) fraud;

(12) constructive fraudulent transfer under California Civil Code § 3439.05;

(13) accounting under California Civil Code § 3439.07(a)(3)(B);

(14) injunction against further disposition of assets under California Civil Code § 3439.07(a)(3)(A); and

(15) declaratory relief under California Civil Code §1060.

(*Id.* ¶¶ 44–171.)

## II.   LEGAL STANDARD

### A.   Judicial Notice

The Court may consider documents beyond the pleadings on a motion to dismiss under Rule 12(b)(6) through "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  The court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either: (1) "generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b).  Taking judicial notice of such facts does not convert the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

3:25-cv-01364-RBM-DEB

**B.      Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (internal citation omitted). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III.      DISCUSSION

**A.      Judicial Notice**

**1.      Hortman Defendants' Request for Judicial Notice**

The Hortman Defendants request that the Court take judicial notice of (1) a Petition for Letters of Special Administration filed in San Diego Superior Court ("State Court") commencing probate proceedings for the Estate of Barbara Hortman; (2) an Order entered in State Court appointing Kim Buhler as special administrator of the Estate of Barbara Hortman; (3) Letters of Special Administration issued in State Court confirming Kim Buhler's appointment as special administrator; and (4) Extended Letters of Special Administration issued in State Court confirming Kim Buhler's appointment as special administrator. (Doc. 22-2 at 2–3; *see* Docs. 22-3–22-7.) Plaintiffs do not oppose the Hortman Defendants' request for judicial notice of these four documents. (*See* Doc. 24-2 at 1–2.) As these four documents are not subject to reasonable dispute, the Court **GRANTS** the Hortman Defendants' request for judicial notice. *Accord In re Trust of Hazel N. Winchester*, Case No. CV 21-6461-GW-DFMx, 2021 WL 4863180, at 3–4 (C.D. Cal. Oct.

3:25-cv-01364-RBM-DEB

18, 2021) (taking judicial notice of letters of special administration and a minute order appointing a special administrator).

### 2.    Plaintiffs' Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of (1) a copy of pages 43–46 of the Deposition of Kim Buhler taken in a related case; (2) a letter from Kim Buhler's counsel regarding that deposition; (3) a copy of the Hortman Family Trust; (4) a copy of the Creditor's Claim I filed in Probate Court in the Estate of Barbara Hortman; (5) a document called "Duties and Liabilities of Personal Representative" filed in Probate Court in the Estate of Barbara Hortman; (6) a Stipulation for Appointment of Special Administrator in the Estate of Barbara Hortman; (7) a copy of an *ex parte* petition to extend letters in the case of Estate of Barbara Hortman; and (8) an *ex parte* order to extend letters in the case of Estate of Barbara Hortman.  (Doc. 24-3 at 2–4; *see* Doc. 24-1 at 5–73.)

Plaintiffs argue that the Court should consider these documents because (1) the Hortman Defendants submitted evidence in support of their Motion to Dismiss, and so Plaintiffs are also entitled to submit evidence; or (2) the Motion to Dismiss is actually a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, as courts lack subject matter jurisdiction on time-barred claims.  (Doc. 24 at 23–25.)

The Court rejects both arguments.  First, the documents submitted by the Hortman Defendants fall within Federal Rule of Evidence 201, which means the Court may consider them without converting the Motion to Dismiss into a motion for summary judgment.  *Lee*, 250 F.3d at 689; *supra* Section III.A.1.  Second, the Court disagrees with Plaintiffs' claim that "[c]ourts lack subject matter jurisdiction on claims barred by the statute of limitations" and declines Plaintiffs' invitation to "construe the Rule 12(b)(6) motion as a Rule 12(b)(1) motion."  (*See* Doc. 24 at 24.)  The cases relied upon by Plaintiffs for this argument[3] are

---

[3]  *See* Doc. 24 at 24 (citing *Napier v. United States*, Case No. 1:12-cv-1308 AWI DLB, 2012 WL 5499629 (E.D. Cal. Nov. 13, 2012) (no subject matter jurisdiction because the plaintiff failed to plead a federal claim); *Arora v. United States*, CV 05-05771 SVW (Ex),

3:25-cv-01364-RBM-DEB

inapposite here where, as Plaintiffs themselves plead, the Court "has original jurisdiction over the claims asserted in this civil action pursuant to 28 U.S.C. § 1331." (FAC ¶ 1.)

Plaintiffs seek judicial notice of the above eight documents to show "a triable issue of fact . . . [on] Barbara Hortman's mental capacity prior to her death" and on the legitimacy of her probate proceedings. (Doc. 24 at 16, 24; Doc. 24-3 at 2–4.) This is improper on a Rule 12(b)(6) motion. The Court thus **<u>DENIES</u>** Plaintiffs' request for judicial notice. Accordingly, the Court does not discuss Plaintiffs' arguments—that Barbara was not "a person" under the relevant provision of the California Code of Civil Procedure ("CCP") and that the probate proceedings for her estate were "a sham" (Doc. 24 at 12–18)—that rely on this extrinsic evidence.

**B.    Motion to Dismiss**

The Hortman Defendants argue that all of Plaintiffs' claims are barred because Plaintiffs failed to file a creditor claim within one year of Barbara's death as "prescribed by Probate Code section 9000, *et seq.*" and CCP section 366.2(a). (Doc. 22-1 at 9–14.)

CCP § 366.2(a) sets a one-year statute of limitations that "appl[ies] in any action on a debt of the decedent." *Rumbaugh v. Harley*, No. 2:17-CV-01970-KJM-AC, 2018 WL 4002854, at *4 (E.D. Cal. Aug. 22, 2018) (quoting *Dacey v. Taraday*, 196 Cal. App. 4th 962, 984 (2011)). Any such actions not brought against a decedent's estate within one year of the decedent's death are barred. *See Embree v. Embree*, 125 Cal. App. 4th 487, 494–95 (2004) (collecting cases). Specifically:

> If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

---

2006 WL 8434677 (C.D. Cal. Mar. 23, 2006) (same); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1989) (court had subject matter jurisdiction but abstained from exercising it due to comity concerns).

3:25-cv-01364-RBM-DEB

Cal. Code Civ. P. § 366.2(a).

Because Barbara died on April 20, 2021 (FAC ¶ 6), if CCP 366.2's one-year limitations period was applicable to a claim, Plaintiffs would have been required to file a creditor claim against her estate on or before April 20, 2022.  *See* Cal. Code Civ. P. § 366.2(a).  Plaintiffs concede they did not file a creditor claim by that time.  (*See* Doc. 24 at 10.)  Instead, Plaintiffs argue that (1) their claims, brought about two and a half years after they discovered their properties were contaminated, are timely because "CERCLA preempts any California state statute of limitations" and (2) the current trustees, Kim Buhler and Norman III, are liable for the alleged current wrongdoing that postdates Barbara's death.  (Doc. 24 at 10, 18–23.)

### 1.    Statute of Limitations: CERCLA Claims

CCP § 366.2(a) "does not apply to the [CERCLA claims] because CERCLA provides its own statute of limitations."  *Est. of Goldberg v. Goss-Jewett Co., Inc.*, Case No. EDCV 14-1872 DSF (SHx), 2016 WL 11565040, at *1 (C.D. Cal. Jan. 5, 2016); *see also South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 507 (1986) ("it is well established that federal claims are subject to state statutes of limitations *unless there is a federal statute of limitations. . .*") (emphasis added); *Golden Gate Bridge, Highway & Transp. v. Golden Gate Bridge, Highway, & Transp. Dist.*, Case Nos. 13-cv-05875-JST; 13-cv-02862-JST, 2014 WL 6706827, at *3 (N.D. Cal. Nov. 24, 2014) (applying the federal maritime statute of limitations instead of CCP § 366.2(a)).  CERCLA § 9607, the provision under which Plaintiffs bring several claims (*see* FAC ¶¶ 44–57), requires that "[a]n initial action for recovery of [ ] costs . . .  must be commenced . . . within 3 years after completion of the removal action . . . [or] within 6 years after initiation of physical on-site construction of the remedial action."  42 U.S.C. § 9613(g)(2).  The Hortman Defendants' discussion of the delayed discovery rule in CERCLA § 9658 (*see* Doc. 30 at 9–10, n.4) is irrelevant here because "[s]ection 9658 applies to actions that assert state law claims *without* an accompanying CERCLA claim."  *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1149 (9th Cir. 2002) (emphasis added) (citing *Tucker v. S. Wood Piedmont Co.*, 28

8

F.3d 1089, 1093 (11th Cir. 1994)).

Courts often dedicate substantial time to the question of whether the three-year period for removal actions or the six-year period for remedial actions applies. *See, e.g.*, *Cal. Dep't of Toxic Substances v. Alco Pac.*, 308 F. Supp. 2d 1124, 1134–1137 (C.D. Cal. 2004). The Court need not reach that issue here because Plaintiffs "incurred recovery costs to begin the cleanup process on their property" no earlier than November 2022. (*See* FAC ¶ 12.) They filed this action two and a half years later, and the FAC two months after that. (*See* Docs. 1, 17.) Thus, even under the shorter three-year statute of limitations for removal actions, Plaintiffs' CERCLA claims are timely. The Hortman Defendants' Motion to Dismiss is thus **DENIED** as to Plaintiffs' First and Second Claims. (*See* FAC ¶¶ 44–57.)

### 2. Statute of Limitations: State Law Claims

Plaintiffs' remaining claims are state law claims. (*See id.* ¶¶ 45–171.) As discussed above, an action against the debt of a decedent must "be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." Cal. Code Civ. P. § 366.2(a). When a plaintiff brings a state law claim "caused or contributed to by exposure to any hazardous substance," 42 U.S.C. § 9658, "CERCLA does not create a federal statute of limitations. Rather, it retains the state statute of limitations, and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations." *O'Connor*, 311 F.3d at 1143–44. CERCLA's delayed discovery rule "trumps a less generous state rule that would start the limitations period earlier." *Id.* at 1144. In other words, it may provide a more lenient commencement date, not a more lenient statute of limitations. *See* 42 U.S.C. § 9658(1).

Assuming without deciding that CERCLA's delayed discovery rule applies to Plaintiffs' state law claims, they are still time-barred. Barbara died on April 20, 2021. (FAC ¶ 6.) To have timely filed, Plaintiffs must have brought their action by April 20, 2022. *See* Cal Code Civ. P. § 366.2(a). But under CERCLA's delayed discovery rule, the "California limitations period [does] not commence until Plaintiffs knew or should have known of their claim." *O'Connor*, 311 F.3d at 1146. Plaintiffs allege that they knew their

properties were contaminated with PCE by November 2022.  (FAC ¶ 12.)  Plaintiffs had a year after that, until November 2023, to file their claims.  As discussed above, they did not meet that deadline.  Therefore, their state law claims are time-barred.  The Hortman Defendants' Motion to Dismiss is thus **GRANTED** as to Plaintiffs' Third through Ninth Claims.  (*See* FAC ¶¶ 58–119.)  Because Plaintiffs can allege no sets of facts in an amended pleading that would cure this timeliness issue, dismissal is **without leave to amend**.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) (dismissal without leave to amend is proper where "the complaint could not be saved by any amendment").[4]

Plaintiffs' Tenth through Fifteenth Claims (*see* FAC ¶¶ 120–171), however, are not governed by CCP § 366.2(a)'s statute of limitations because they could not have been brought against Barbara while she was alive.  "By its own terms, § 366.2 applies to a 'cause of action [that] survives' the decedent's death, 'whether accrued or not accrued.'"  *Bonner v. City of Long Beach*, Case No. 2:22-cv-02819-CAS (MAAx), 2023 WL 226103, at *3

---

[4]   Even if the Court allowed leave to amend and Plaintiffs alleged the same facts they argue regarding Barbara being a beneficiary at the time of her death (*see* Doc. 24 at 12–15), these claims would still be barred.  Plaintiffs argue that, "[p]roperly interpreted, since the [Hortman] Trust (through its Trustees) caused the harm, then the one-year statute of limitations under CCP S 366.2 could not apply, because the decedent, Barbara Hortman, not any of the Trustees, is the one that died, and she died [as] a beneficiary."  (*Id.* at 15.)

The California Court of Appeal rejected a similar argument in *Stoltenberg v. Newman*, 179 Cal. App. 4th 287, 295–96 (2009).  There, the plaintiffs argued that § 366.2 did not apply because it "refers to a person whom an action may be brought on a liability of the person," and that person was the trust, not the trustee.  *Id.*  The court reasoned that "[it] would make no sense if the statute of limitations barring claims for a decedent's tortious action could be avoided by not pursuing a claim against the estate of the decedent but rather proceeding against the successor trustee of the decedent's trust."  *Id.*  Indeed, "extending the statute of limitations for trusts 'would create a substantial loophole in the statutory scheme, and lead to confusion and delay in settling estates. . . . This result would negate the legislative intent behind the decision to enact the special limitations statute.'"  *Id.* (quoting *Levine v. Levine*, 102 Cal. App. 4th 1256, 1263 (2002)).  Plaintiffs' claims stem from Barbara's misconduct while she was alive, and could have been brought against her while she was alive.  Therefore, § 366.2 applies, regardless of whether Barbara was a trustee or beneficiary at the time of her death.

(C.D. Cal. Feb. 27, 2023) (quoting Cal. Code Civ. P. § 366.2(a)). "Courts have interpreted this language to require that, for § 366.2 to apply, 'the breach or misconduct must occur prior to the decedent's death,' such that the claim for relief existed before the decedent's death and survived the decedent." *Id.* (quoting *Dacey*, 196 Cal. App. 4th at 983).

Plaintiffs' Tenth through Fifteenth Claims arise out of Kim Buhler and Norman III's transfer of money, assets, and property from the Hortman Trust "immediately after" Barbara died. (*See* FAC ¶¶ 125, 139, 145.) Because Kim Buhler and Norman III's allegedly fraudulent conduct happened after Barbara's death, CCP § 366.2(a) does not apply. Therefore, the Hortman Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' Tenth through Fifteenth Claims (FAC ¶¶ 120–171).

### 3.    Continuing Trespass, Nuisance, and Negligence

Plaintiffs also argue that Kim Buhler and Norman III have "present liability . . . for their continuing duty to abate or clean up the contamination." (Doc. 24 at 19.) Plaintiffs argue that the FAC plausibly alleges claims against Norman III and Kim Buhler for continuing trespass, continuing nuisance, and continuing negligence. (*Id.* at 20–23.) The Court disagrees.

Plaintiffs argue not only that the initial discharge of PCE into the soil constituted a trespass, but that Norman III and Kim Buhler's "failure and refusal to abate and clean up the contaminated soil" after Barbara's death constitutes a continuing trespass. (*Id.* at 20–21.) But as Plaintiffs note, the contaminated soil was "caused by a discharge *that occurred during* the [Hortman Trust's] ownership of [Plaintiffs' land]." (*Id.* at 21 (emphasis added).) Therefore, because the cause of action for continuing trespass stems from Barbara's actions before her death, it "existed before the decedent's death and survived the decedent" such that CCP § 366.2(a) applies. *Bonner*, 2023 WL 226103, at *3; *cf. Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1106–07 (C.D. Cal. 2009) (concluding that § 366.2 did not bar the plaintiff's malicious prosecution claim against the decedent's estate because "such claim could not have been filed while [the defendant] was still alive").

3:25-cv-01364-RBM-DEB

None of the cases cited by Plaintiffs compel a different conclusion. The court in *Lanfri v. Goodwill of Silicon Valley*, 762 F. Supp. 3d 849 (N.D. Cal. 2024), did not discuss § 366.2 at all. Each of the other cited cases concerned misconduct that, as Plaintiffs point out, was either "not enforceable against the deceased . . . while he was alive" or that "had not occurred before the decedent's death." (*See* Doc. 24 at 20 (citing *Est. of Goldberg*, 2016 WL 11565040, at *1 n.2; *Dacey*, 196 Cal. App. 4th at 986; *Del Records, Inc. v. JG Music*, Case No. 2:16-cv-03666-ODW (KSx), 2025 WL 487189, at *6 (C.D. Cal. Feb. 12, 2025)).) These situations are unlike the one presently before the Court, where the alleged misconduct occurred while the decedent was alive and the cause of action survived her.

The Court undertakes the same analysis and reaches the same conclusion as to Plaintiffs' continuing nuisance and continuing negligence claims.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**. Accordingly:

1. The Hortman Defendants' Request for Judicial Notice is **GRANTED**.

2. Plaintiffs' Request for Judicial Notice is **DENIED**.

3. The Hortman Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' Third through Ninth Claims. (*See* FAC ¶¶ 58–119.) These claims are **DISMISSED without leave to amend** as to the Hortman Defendants.

4. The Hortman Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' First, Second, and Tenth through Fifteenth Claims. (*See id.* ¶¶ 44–57, 120–171.)

5. The Hortman Defendants **shall file an Answer** to the FAC on or before **March 5, 2026**.

**IT IS SO ORDERED.**

DATE:  February 11, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:25-cv-01364-RBM-DEB